IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HENK ROGERS and AKEMI ROGERS, | ) | Civ. No. 10-00337 ACK-LEK |
| | ) | |
|        Plaintiffs, | ) | ORDER DENYING COUNTERCLAIM |
| | ) | DEFENDANT FUKASE'S MOTION FOR |
|    v. | ) | JUDGMENT ON THE PLEADINGS |
| | ) | |
| MAKIKO FUKASE; JOHN DOES 1-20; | ) | |
| JANE DOES 1-20; DOE CORPORATIONS | ) | |
| 1-20; DOE PARTNERSHIPS 1-20; and | ) | |
| DOE ENTITIES 1-20, | ) | |
| | ) | |
|        Defendant. | ) | |
| _____ | ) | |
| MAKIKO FUKASE, | ) | |
| | ) | |
|        Third-Party Plaintiff, | ) | |
| | ) | |
|    v. | ) | |
| | ) | |
| HIROKO OGIWARA; SHUKO | ) | |
| INTERNATIONAL CORPORATION dba | ) | |
| SHUKO REALTY; JOHN DOES 1-20; | ) | |
| JANE DOES 1-20; DOE CORPORATIONS | ) | |
| 1-20; DOE PARTNERSHIPS 1-20; and | ) | |
| DOE ENTITIES 1-20, | ) | |
| | ) | |
|        Third-Party | ) | |
|        Defendants. | ) | |
| _____ | ) | |
| SHUKO INTERNATIONAL CORPORATION | ) | |
| and HIROKO OGIWARA, | ) | |
| | ) | |
|        Counterclaim | ) | |
|        Plaintiff, | ) | |
| | ) | |
|    v. | ) | |
| | ) | |
| MAKIKO FUKASE | ) | |
| | ) | |
|        Counterclaim | ) | |
|        Defendant. | ) | |
| _____ | ) | |

## ORDER DENYING COUNTERCLAIM DEFENDANT FUKASE'S MOTION FOR JUDGMENT ON THE PLEADINGS

### PROCEDURAL BACKGROUND

On February 25, 2010, Henk Rogers and Akemi Rogers (collectively, "the Rogers") filed a complaint ("Complaint") in the Circuit Court of the First Circuit in Hawai'i against Makiko Fukase ("Fukase").  Doc. No. 1.  On June 8, 2010, Fukase filed an answer to the Complaint as well as a third-party complaint ("Third-Party Complaint") against Hiroko Ogiwara and Shuko International Corporation dba Shuko Realty (collectively, "Shuko Realty").  Id.

On June 14, 2010, Fukase removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  Id.  On July 6, 2010, Shuko Realty filed an answer to the Third-Party Complaint and also filed a counterclaim ("Counterclaim") against Fukase.  Doc. No. 7.  On July 26, 2010, Fukase filed a "reply" to the Counterclaim.  Doc. No. 10.

On August 12, 2010, Fukase filed a motion for judgment on the pleadings as to the Counterclaim ("Motion").  Doc. No. 14.  On October 18, 2010, Shuko Realty filed a memorandum in opposition to the Motion ("Opp'n").  Doc. No. 23.  On October 25, 2010, Fukase filed a reply memorandum in support of the Motion ("Reply").  Doc. No. 25.  The Court held a hearing on the Motion on November 8, 2010.

## FACTUAL BACKGROUND[1]

This diversity action stems from a residential real estate deal that did not come to fruition. According to the Counterclaim, Shuko Realty began working as Fukase's real estate broker on July 18, 2008. Counterclaim ¶ 6. On August 18, 2008, Fukase, represented by Shuko Realty, executed a contract to purchase ("Purchase Contract") a home ("Home") from the Rogers for $3.6 million.[2] Id. ¶¶ 7-8. The Rogers were represented by real estate broker Coldwell Banker Pacific Properties ("Coldwell Banker"). Id. ¶ 7. The Purchase Contract provided that "Seller agrees to pay Coldwell Banker Pacific Prop (Brokerage Firm) a commission for the sale of the Property in the amount of 6% of the sales price per the terms of the Listing Agreement." Id. ¶ 9.

On August 23, 2008, Shuko Realty and Coldwell Banker entered into a Cooperating Brokerage Firm's Separate Agreement ("Cooperating Agreement"). Id. ¶ 10. The Cooperating Agreement provided:

> In consideration of the assistance given by the Cooperating Brokerage Firm [Shuko Realty] . . . , listing Brokerage Firm [Coldwell Banker] agrees to pay

---

[1] The facts as recited in this Order are for the purpose of disposing of the instant motions and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

[2] The Home was located at 639 Kuana Street, Honolulu, Hawai'i, 96816.

> a commission at closing to Cooperating Brokerage Firm
> in the following amount: 3% of the sales price + GET.
> The commission payable to Cooperating Brokerage Firm
> shall be paid through Escrow and shall be subject to
> the receipt of Listing Brokerage Firm's commission from
> Seller.  In the event Seller retains any of Buyer's
> deposits as liquidated damages or obtains other
> monetary damages against Buyer, and pays to Listing
> Brokerage Firm any portion thereof, Listing Brokerage
> Firm agrees to share with Cooperating Brokerage Firm
> 50.000% of the amount so received.

Id. ¶ 11.

Pursuant to the Purchase Contract, Fukase made an earnest money deposit of $300,000 into escrow for the purchase of the Home.  Id. ¶ 12.  Although the deal was scheduled to close on September 30, 2008, Fukase cancelled the purchase by letter on September 23, 2008.  Id. ¶¶ 13, 15.  The Counterclaim alleges that this "was without cause and outside of the allowable time for cancellation provided in the Purchase Contract."  Id. ¶ 15. Fukase has continued to refuse to purchase the Home, and her $300,000 earnest money deposit remains in escrow.  Id. ¶¶ 12, 16.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") states, "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." When Rule 12(c) is used to raise the defense of failure to state a claim upon which relief can be granted, the standard governing the Rule 12(c) motion for judgment on the pleadings is the same as that governing a Rule 12(b)(6) motion.  See McGlinchy v. Shell

4

Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988); Luzon v. Atlas
Ins. Agency, Inc., 284 F. Supp. 2d 1261, 1262 (D. Haw. 2003).  As
a result, a motion for judgment on the pleadings for failure to
state a claim may be granted "'only if it is clear that no relief
could be granted under any set of facts that could be proven
consistent with the allegations.'"  McGlinchy, 845 F.2d at 810
(quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

        Thus, "[a] judgment on the pleadings is properly
granted when, taking all allegations in the pleading as true, the
moving party is entitled to judgment as a matter of law."  Enron
Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 528
(9th Cir. 1997) (citing McGann v. Ernst & Young, 102 F.3d 390,
392 (9th Cir. 1996)).  "Not only must the court accept all
material allegations in the complaint as true, but the complaint
must be construed, and all doubts resolved, in the light most
favorable to the plaintiff."  McGlinchy, 845 F.2d at 810.
"Nonetheless, conclusory allegations without more are
insufficient to defeat a [Rule 12(c)] motion to dismiss for
failure to state a claim."  Id.

## DISCUSSION

        Shuko Realty's Counterclaim asserts four counts against
Fukase: breach of contract (Count I), breach of implied contract
(Count II), quantum meruit (Count III), and promissory estoppel
(Count IV).  Fukase moves for judgment on the pleadings as to

5

each of these counts.  The Court will address each count in turn.[3]

## I.        Count I - Breach of Contract

Count I of the Counterclaim alleges that "Fukase's breach of the Purchase Contract deprived intended third-party beneficiary, Shuko Realty, of its commission from the sale of the [Home] for the real estate brokerage services provided to Fukase."  Counterclaim ¶ 21.  It further alleges that "Fukase is liable to Shuko Realty for the 3% commission on the $3,600,000.00 sales price for the [Home], or $108,000.00, which Shuko Realty would have received if not for Fukase's breach."  Id. ¶ 23. Shuko Realty alleges it would have received this commission had the sale been consummated because the Purchase Contract required the Rogers to pay Coldwell Banker 6% of the sales price and the Cooperating Agreement required Coldwell Banker to pay Shuko

_____

[3] At the outset, Fukase argues that the Counterclaim should be dismissed because (1) the terms of the Cooperating Agreement establish that Shuko Realty can recover any commission it is owed from Coldwell Banker alone, and only under the Cooperating Agreement itself and (2) Shuko Realty impermissibly requests "general damages," which cannot be recovered by a corporation and cannot specify a precise dollar amount.  Motion at 7-10; Reply at 4-7, 14-15.  Although the Court will address the first argument below, where applicable, it notes that the Cooperating Agreement does not provide that it is the sole means through which Shuko Realty may recover damages in the event of Fukase's breach. Fukase's second argument is meritless.  Shuko Realty's employment of the term "general damages" does not mean it is seeking recovery for physical pain and suffering.  Instead, Shuko Realty's four claims plainly seek to recover for the damages naturally resulting from Fukase's alleged misconduct.  See 22 Am. Jur. 2d Damages § 41 (2010); Opp'n at 19-20.

Realty half of that commission (i.e., 3% of the sales price).
See id. ¶¶ 21-23.

Fukase fails to demonstrate she is entitled to judgment
on the pleadings as to Count I. "Generally, 'third parties do
not have enforceable contract rights. The exception to the
general rule involves intended third-party beneficiaries.'"
Ass'n of Apartment Owners v. Venture 15, Inc., 115 Haw. 232, 269,
167 P.3d 225, 262 (Haw. 2007) (citation omitted) (emphasis in
original). A holder of intended third-party beneficiary status
may "sue to enforce contract provisions for which they are
intended to benefit." Stanton v. Bank of America, N.A., Civ. No.
09-00404 DAE-LEK, 2010 WL 4176375 at *6 (D. Haw. Oct. 19, 2010).

"[A] prime requisite to the status of third party
beneficiary under a contract is that the parties to the contract
must have intended to benefit the third party, who must be
something more than a mere incidental beneficiary." Ass'n of
Apartment Owners, 115 Haw. at 269-70, 167 P.3d at 262-63
(quotation marks and citations omitted). In particular, a third
party is an intended beneficiary "if 'recognition of a right to
performance in the beneficiary is appropriate to effectuate the
intention of the parties and the performance of the promise will
satisfy an obligation of the promisee to pay money to the
beneficiary.'" Jou v. Dai-Tokyo Royal State Ins. Co., 116 Haw.
159, 169, 172 P.3d 471, 481 (Haw. 2007) (quoting Restatement

7

(Second) of Contracts § 302(1)(a)) (ellipses omitted).  The law requires "special clarity" in determining whether a party is a third-party beneficiary, and courts "must not distort the manifest intentions of the contracting parties or reach conclusions contrary to the clear language of the agreement." Sher v. Cella, 114 Haw. 263, 269, 160 P.3d 1250, 1257 (Haw. Ct. App. 2007).  The Hawai'i Supreme Court has stated that third-party beneficiary status is "[o]rdinarily" a question of fact. Jou, 116 Haw. at 168, 172 P.3d at 480.

In Sher v. Cella, the Hawai'i Intermediate Court of Appeals found that a listing broker ("CBIP") for a home was a third-party beneficiary of the acquisition agreement through which the home was sold.  114 Haw. at 269-70, 160 P.3d at 1256-57.[4/]  According to Sher, a paragraph in the acquisition agreement providing that the seller would pay CBIP a commission after closing "clearly and unambiguously state[d] an intent to confer a benefit upon CBIP."  Id.  The court reasoned as follows:

> This is not a situation where the non-signatory third party simply stood to receive a benefit as a result of the contract; rather, the non-signatory third party was explicitly named in the contract and thus is an intended third-party beneficiary. Contrary to Appellants' assertions, the Acquisition Agreement does satisfy the three-part test described in E.I. DuPont de Nemours, in that the contracting parties did intend that CBIP benefit from the agreement (in the form of

_____

[4/] An independent contractor and agent/salesperson for CBIP was the broker for the buyers.  114 Haw. at 265-66, 160 P.3d at 1252-53.

> the broker's commission), the benefit was intended in satisfaction of a pre-existing obligation to that party (the requirement described in the Listing Contract that the Seller pay a commission to the brokers in the event of a sale), and the intent to confer the benefit was a material part of the parties' purpose in entering into the agreement (the parties could not have conveyed the property without paying the commission due to the brokers).  [E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 196 (3d Cir. 2001).]

Id. at 270, 160 P.3d at 1257 (footnotes and some citations omitted).

Recognizing that third-party beneficiary status is ordinarily a question of fact, this Court finds that Shuko Realty has sufficiently alleged it was an intended third-party beneficiary of the Purchase Contract.  Like in Sher, Shuko Realty, "the non-signatory third party[,] was explicitly named in the [Purchase Contract]."  114 Haw. at 270, 160 P.3d at 1257; see Counterclaim ¶ 8 (alleging that Fukase's signing of the Purchase Contract confirmed she was "represented by [Shuko Realty]" and that "oral or written disclosure relative to agency representation" had been provided to her); Opp'n at 11-12.[5/] Although Shuko Realty was not referenced in the clause of the

------

[5/] In a footnote, Sher pointed out that "[t]he Acquisition Agreement states no intent to confer any benefit to Cella or Tezac personally [individual brokers for the seller and buyer, respectively]; of all the Appellants, the agreement refers only to CBIP."  114 Haw. at 270 n.6, 160 P.3d at 1257 n.6.  This Court finds Shuko Realty distinguishable from the individual brokers in Sher because Shuko Realty was referenced in the Purchase Contract.

Purchase Contract establishing that the Rogers were to pay Coldwell Banker a 6% commission, this does not entitle Fukase to judgment on the pleadings as to Count I.  Where there is evidence in a contract that a third party might have been an intended beneficiary, the third-party beneficiary determination is a question of fact not properly dismissed at the pleading stage. Cf. Jou, 116 Haw. at 168, 172 P.3d at 480 (citing an Arkansas opinion "holding that the trial court properly granted defendant-appellee's motion to dismiss inasmuch as 'there [was] nothing in the contract to indicate that [plaintiff-appellant] was an intended third-party beneficiary[]'" (quoting Elsner v. Farmers Ins. Group, Inc., 220 S.W.3d 633, 636 (Ark. 2005))). This is especially true here, where the Court has not yet had the benefit of reviewing the entire Purchase Contract itself.

Moreover, the Court finds that a question of fact remains as to whether the Purchase Contract satisfies the three-part test applied in Sher.  First, as noted above, there is a question of fact as to whether the contracting parties intended that Shuko Realty benefit from the Purchase Contract – likely in the form of a broker's commission – by naming Shuko Realty as Fukase's broker in the Purchase Contract itself.  See Sher, 114 Haw. at 270, 160 P.3d at 1257; Counterclaim ¶ 8.  Second, to the extent the parties intended for Shuko Realty to obtain a commission as a result of the Purchase Contract's execution, this

10

may have been "intended in satisfaction of a pre-existing obligation to [Shuko Realty]." <u>Sher</u>, 114 Haw. at 270, 160 P.3d at 1257. Namely, the implied obligation that Fukase would enable Shuko Realty to earn a commission in the event that it procured a deal into which Fukase entered. <u>See</u> <u>Chan v. Tsang</u>, 3 Cal. Rptr. 2d 14, 17 (Cal. Ct. App. 1991).[6/] Third, any such "intent to confer the benefit" to Shuko Realty may have been "a material part of the parties' purpose in entering into the agreement" because the parties may not have been able to "convey[] the [Home] without paying the commission due to the brokers[.]" <u>Sher</u>, 114 Haw. at 270, 160 P.3d at 1257; <u>see generally</u> <u>Chan</u>, 3 Cal. Rptr. 2d at 20 (noting that where a broker is retained by a buyer and helps him to secure and enter into a contract to purchase real estate, such "broker may be regarded as a third party beneficiary of the contract between the buyer and seller");

---

[6/] In <u>Chan</u>, the California Court of Appeal held that where

> a broker is retained by the buyer, locates property for the buyer, and the seller agrees to pay at the price offered, then the buyer impliedly promises to complete the transaction so that the broker can recover the commission. If the buyer subsequently defaults, the broker can recover the full commission from the buyer based upon breach of the implied promise. This theory of recovery has also been described in third party beneficiary terms. In other words, the broker is alleged to be a third party beneficiary of the purchase agreement between the buyer and seller.

3 Cal. Rptr. 2d at 17 (citations omitted). The Court will discuss this implied promise rule more fully below, <u>infra</u> Section II.

Donnellan v. Rocks, 99 Cal. Rptr. 692, 695-96 (Cal. Ct. App. 1972).  But cf. Super 7 Motel Assocs. v. Wang, 16 Cal. App. 4th 541, 547 (Cal. Ct. App. 1993) (stating that while Donnellan "loosely used third party beneficiary language," its holding was premised on the breach of an implied promise, which involved a direct contractual relationship).

Fukase argues unpersuasively that she is entitled to judgment on the pleadings as to Count I.  Fukase begins by challenging this count on several grounds that are inapposite to Shuko Realty's theory of recovery.  First, Fukase argues that under the Cooperating Agreement, Shuko Realty became a subagent of Coldwell Banker and incurred contractual duties to Fukase, herself a third-party beneficiary of the Cooperating Agreement. Motion at 10-12.  Second, Fukase argues that because there is no actual contract between Shuko Realty and Fukase regarding the payment of a commission, Shuko Realty had only the "opportunity" to obtain a commission.  Id. at 12-13.  Third, Fukase contends Shuko Realty's claim for a commission is barred by Hawaii's Statute of Frauds, HRS § 656-1, because there is no written agreement in which Fukase commits to paying Shuko Realty a commission.  Motion at 15-16.  These arguments are unavailing because they do not respond to the premise of Count I, that Shuko Realty was a third-party beneficiary of the written Purchase

Contract.   See Opp'n at 8-10.[7]

The Court is similarly unconvinced by Fukase's other
arguments why, as a matter of law, Shuko Realty is not a third-
party beneficiary of the Purchase Contract.  First, Fukase cites
a number of cases from outside Hawai'i for the proposition "that
Shuko [Realty], as a broker in the subject transaction, cannot
legally be deemed a third-party."  Motion at 18.  These cases are
unavailing because under Hawai'i law, a broker to a real estate
transaction can be an intended third-party beneficiary.  See
Sher, 114 Haw. at 270, 160 P.3d at 1257; see also Chan, 3 Cal.
Rptr. 2d at 17, 20; Donnellan, 99 Cal. Rptr. at 695-96.[8]

Second, Fukase argues that Shuko Realty's execution of
the Cooperating Agreement – and its having done so five days
after the signing of the Purchase Agreement – proves that the
parties to this lawsuit intended that Coldwell Banker alone was
to provide Shuko Realty's commission.  Motion at 19-21.  For the
reasons discussed above, however, the Court agrees with Shuko
Realty that, notwithstanding the Cooperating Agreement and when

---

[7] The Court is also unpersuaded by Fukase's Statute of
Frauds argument because Shuko Realty's performance in securing
the Purchase Contract for Fukase removes any promise by Fukase to
pay Shuko Realty's commission from the Statute's reach.  See
Hawaiian Trust Co. v. Cowan, 4 Haw. App. 166, 171, 663 P.2d 634,
637 (Haw. Ct. App. 1983) (citing McIntosh v. Murphy, 52 Haw. 29,
34-35, 469 P.2d 177, 180-181 (Haw. 1970)); see also Hamilton v.
Funk, 66 Haw. 451, 453, 666 P.2d 582, 583 (Haw. 1983).

[8] Fukase's cases are also legally and/or factually
inapposite, as Shuko Realty points out.  Opp'n at 11 n.6.

it was signed, a question of fact remains as to whether Shuko Realty was an intended third-party beneficiary of the Purchase Contract.  Opp'n at 9-12.

Third, Fukase contends that public policy reasons militate against concluding that Shuko Realty was an intended third-party beneficiary.  Motion at 20.  According to Fukase, "a direct personal interest in the Purchase Contract by the Buyer[']s Broker would comprise [sic] fiduciary duties and taint the profession" because brokers may sue their own clients in order to enforce purchase contracts.  Id.  The Court finds this argument unconvincing both empirically and because Fukase's reasoning implies that sellers' brokers should likewise be precluded from being found third-party beneficiaries of purchase agreements.  Sher's finding that a seller's broker was a third-party beneficiary to its client's purchase agreement demonstrates that Hawai'i courts are not persuaded by Fukase's policy concerns.  See Sher, 114 Haw. at 270, 160 P.3d at 1257; see also Chan, 3 Cal. Rptr. 2d at 17, 20 (holding that a buyer's broker may be a third-party beneficiary of a contract to purchase real estate); Donnellan, 99 Cal. Rptr. at 695-96 (same).

Fourth, Fukase argues that Shuko Realty cannot recover damages as a third-party beneficiary because the Rogers have not paid Coldwell Banker's commission, which is a condition precedent to Shuko Realty's recovery under the Cooperating Agreement.

14

Motion at 21-23.  This argument fails because Shuko Realty's
claim is not premised on the Cooperating Agreement.
Consequently, the terms of the Cooperating Agreement are not
controlling.  In any event, Shuko Realty's claim is that Fukase
"wrongfully prevented the very condition precedent that she
complains never occurred."  Opp'n at 12.  "[N]o one can avail
himself of the non-performance of a condition precedent, who has
himself occasioned its non-performance."  Ikeoka v. Kong, 47 Haw.
220, 228, 386 P.2d 855, 860 (Haw. 1963); see also Van Winkle &
Liggett v. G.B.R. Fabrics, Inc., 511 A.2d 124, 131 (N.J. 1986)
("'One who actively prevents the occurrence of a condition cannot
rely on the non-occurrence of that condition to avoid
liability.'" (citation omitted)).

Finally, contrary to Fukase's contention, Enea v.
Coldwell Banker/Del Monte Realty, 225 B.R. 715 (N.D. Cal. 1998),
does not prove that Shuko Realty can recover damages only under
the Cooperating Agreement.  Motion at 22.  Enea addressed
limitations on a cooperating broker's right to obtain his
commission from the seller's broker; it did not address the scope
of a cooperating broker's right to pursue damages from a
breaching buyer-client.  Compare Enea, 225 B.R. at 717-18 ("When
the cooperating broker is the procuring cause of the sale, his
recovery from the listing broker is limited to the terms of the
cooperation agreement." (quotation marks omitted)), with Chan, 3

15

Cal. Rptr. 2d at 20 (holding that a buyer's broker could recover damages from the defaulting buyer, notwithstanding that the seller was required by the purchase agreement to pay this broker's commission, because the agreement "sets forth _Seller's_ duty to pay Broker's commission.  It does not refer to an obligation of Buyer").

        In sum, Fukase is not entitled to judgment on the pleadings as to Count I because there is a question of fact as to whether Shuko Realty was an intended third-party beneficiary of the Purchase Contract.[9]

## II.        Count II - Breach of Implied Contract

        Count II of the Counterclaim alleges that "[b]y confirming Shuko Realty as her real estate broker in the Purchase Contract, Fukase executed an implied contract that Shuko Realty would be paid its commission for the real estate brokerage services provided to Fukase."  Counterclaim ¶ 27.  According to Count II, "Shuko Realty fully performed its obligations in providing real estate brokerage services to Fukase," but "Fukase cancelled the Purchase Contract without cause and in breach of her implied contract with Shuko Realty."  Id. ¶¶ 28-29.  Further, such breach "deprived Shuko Realty of its commission from the sale of the [Home]," so Fukase is liable for the 3% commission,

---

[9] As noted above, the Purchase Contract has not yet been provided to the Court.

or $108,000.00, "which Shuko Realty would have received if not for Fukase's breach." Id. ¶ 32.

Fukase fails to demonstrate that she is entitled to judgment on the pleadings as to Count II.  The Hawai'i Supreme Court has defined an implied-in-fact contract as follows:

> An implied contract, in the proper sense, is where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts, as in the case where a person performs services for another, who accepts the same, the services not being performed under such circumstances as to show that they were intended to be gratuitous, or where a person performs services for another on request.

Kemp v. Haw. Child Support Enforcement Agency, 111 Haw. 367, 391, 141 P.3d 1014, 1038 (Haw. 2006) (quoting Durette v. Aloha Plastic Recycling, 105 Haw. 490, 100 P.3d 60, 74 (Haw. 2004); Wall v. Focke, 21 Haw. 399, 404-05 (Haw. Terr. 1913).  "The essential element of an implied contract . . . is an apparent mutual intent to form a contract."  Kemp, 11 Haw. at 391, 141 P.3d at 1038.  "[T]he intent to incur mutual obligations is implied from the actions of the parties."  Id.

Although the Hawai'i courts have not addressed the issue at bar, several other states have permitted claims for breach of an implied contract in analogous situations.  When interpreting state law, a federal court is bound by the decisions of a state's highest court.  Arizona Elec. Power Coop., Inc. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995).  "In the absence of such a decision, a federal court must predict how the highest

17

state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." Id.  Hence, the federal court is "'required to ascertain from all the available data what the state law is and apply it.'"  Soltani v. W. & S. Life Ins. Co., 258 F.3d 1038, 1045 (9th Cir. 2001) (citation omitted).  Moreover, this Court is mindful that "[t]he general trend of Hawaiian courts is to look to California law in the absence of Hawaiian authority."  Locricchio v. Legal Servs. Corp., 833 F.2d 1352, 1357 (9th Cir. 1987); see also Sutherland v. Kaonohi Ohana, Ltd., 776 F.2d 1425, 1427 n.4 (9th Cir. 1985) ("[C]ourts of Hawaii frequently look to decisions from California when deciding cases of first impression.").

For example, in Chan v. Tsang, 3 Cal. Rptr. 2d 14 (Cal. Ct. App. 1991), the California Court of Appeal explained:

> Although it is generally the seller's responsibility to pay the broker whatever commissions are due, in certain circumstances the broker may recover from a defaulting buyer.  If the broker is retained by the buyer, locates property for the buyer, and the seller agrees to pay at the price offered, then the buyer impliedly promises to complete the transaction so that the broker can recover the commission.  If the buyer subsequently defaults, the broker can recover the full commission from the buyer based upon breach of the implied promise.

Id. at 17; see also id. at 19 (holding that "Buyer is liable to Broker for the commission Broker would have received from Seller had Buyer performed" because "Buyer retained Broker, Broker located property for Buyer, Buyer agreed to purchase but then

18

refused to complete the transaction without cause"); <u>Donnellan v. Rocks</u>, 99 Cal. Rptr. 692, 695-96 (Cal. Ct. App. 1972).

Likewise, the New Jersey Supreme Court holds:

> [W]hen a prospective buyer solicits a broker to find or to show him property which he might be interested in buying, and the broker finds property satisfactory to him which the owner agrees to sell at the price offered, and the buyer knows the broker will earn commission for the sale from the owner, the law will imply a promise on the part of the buyer to complete the transaction with the owner.  If he fails or refuses to do so without valid reason, and thus prevents the broker from earning the commission from the owner, he becomes liable to the broker for breach of the implied promise.  The damages chargeable to him will be measured by the amount of commission the broker would have earned from the owner.  If no amount or percentage had been agreed upon, recovery will be based on [q]uantum meruit and measured by the amount accepted as reasonable according to the usual custom in such brokerage business.

<u>Ellsworth Dobbs, Inc. v. Johnson</u>, 236 A.2d 843, 859 (N.J. 1967);[10/] <u>see also</u> <u>Rothman Realty Corp. v. Bereck</u>, 376 A.2d 902,

---

[10/] The Virginia Supreme Court declined to adopt the <u>Ellsworth Dobbs</u> rule, although it did so where only one broker was involved in a real estate transaction and there was no evidence that the buyer had employed this broker's services.  <u>See Prof'l Realty v. Bender</u>, 222 S.E.2d 810, 811 (Va. 1976) ("[W]here, as here, a real estate broker, a seller, and a buyer join in a sales contract in which the seller promises to pay the broker a commission and the buyer makes no such promise, neither we nor the trial courts will indulge an inference to supply the omission, for to do so would be to make a new contract for the three parties.").  Similarly, though the Missouri Court of Appeals was equivocal about following <u>Ellsworth Dobbs</u>, it found that case distinguishable because there was no evidence that the buyer had solicited the only broker involved in the sale at issue.  <u>See Specialty Rests., Corp. v. Adolph K. Feinberg Real Estate Co.</u>, 770 S.W.2d 324, 326-27 (Mo. Ct. App. 1989).  The Florida District Court of Appeal, however, has clearly declined

(continued...)

907 (N.J. 1977). New York courts have reached the same conclusion:

> Absent express exclusion of the broker's right, where a buyer employs a broker who procures an agreement which the buyer fails or refuses to perform, the buyer is liable for the commissions the broker would have earned if the agreement had been executed. That is true even where the contract or the usual practice contemplates that the seller will pay the commissions and where there is only an implied contract of employment between the buyer and the broker and the buyer has not expressly undertaken to pay commissions.

Schaechter v. Regency Properties, Inc., 497 N.Y.S.2d 793, 794 (N.Y. App. Div. 1985) (internal citations omitted); Parke-Hayden, Inc. v. Loews Theater Mgmt. Corp., 789 F. Supp. 1257, 1262-63 (S.D.N.Y. 1992).

Because the Court believes the Hawai'i Supreme Court would likely be persuaded by these authorities, it finds that Fukase is not entitled to judgment on the pleadings as to Count II. Accepting as true Shuko Realty's allegations that (1) Fukase retained Shuko Realty, (2) Shuko Realty fully and effectively represented her in researching, negotiating, and preparing the Purchase Contract, (3) the Purchase Contract was executed, and (4) Fukase cancelled the Purchase Contract without cause, Fukase may be "liable to [Shuko Realty] for the commission [it] would have received from [Coldwell Banker] had [Fukase] performed."

---

[10]/(...continued)
to follow Ellsworth Dobbs. See Williams v. Stewart, 424 So.2d 204, 205 (Fla. Dist. Ct. App. 1983).

Chan, 3 Cal. Rptr. 2d at 19; see also Ellsworth Dobbs, 236 A.2d at 859; Schaechter, 497 N.Y.S.2d at 794.

The holdings outlined above foreclose Fukase's arguments that Count II fails as a matter of law because Shuko Realty was a subagent of Coldwell Banker and had only the "opportunity" to obtain a commission.  Motion at 10-13; Reply at 5, 9-10.  Although pursuant to the Cooperating Agreement, Shuko Realty was to obtain its commission from Coldwell Banker, and not the Rogers, this does not render the above cases inapposite.  The reasoning underlying these cases' implied contract rule is that the buyer may be liable to her broker even where the buyer was not the one from whom the broker expected to receive a commission.  In the Court's view, whether the buyer's broker expected to receive a commission directly from the seller or from the seller's broker is not determinative.

Likewise, California precedent shows that Shuko Realty's implied contract claim is not precluded by virtue of the Cooperating Agreement's provision that if the Rogers obtained monetary damages from Fukase and gave a portion to Coldwell Banker, Coldwell Banker would give 50% of this portion to Shuko Realty.  See Motion at 7-8, 21-23; Counterclaim ¶ 11.

In Chan, a purchase agreement between a buyer ("Buyer") and a seller ("Seller") provided that if Buyer defaulted, his broker ("Broker") could "recover from the Seller 'only if and

21

when Seller collects damages from Buyer, by suit or otherwise, and then in an amount not to exceed one-half of the damages collected provided same shall not exceed the full amount of the commission[.]'" 3 Cal. Rptr. 2d at 19-20. After concluding this provision was not controlling, even though Buyer had defaulted, Chan held that Buyer was liable to Broker for the full commission Broker would have received but for Buyer's default. Id. at 19-21. Chan reasoned that the purchase agreement "sets forth Seller's duty to pay Broker's commission. It does not refer to an obligation of Buyer." Id. at 20. Similarly, the Purchase Agreement here sets forth the Rogers' duty to pay Coldwell Banker's commission, and the Cooperating Agreement sets forth Coldwell Banker's duty to pay Shuko Realty's commission; neither of these documents "refer to an obligation of [Fukase]." Id.; see also Donnellan, 99 Cal. Rptr. at 695-96.[11/]

     The Court is also unpersuaded by Fukase's argument that Count II is precluded by HRS § 656-1, Hawaii's Statute of Frauds. Motion at 15-16. HRS § 656-1(6) requires an "agreement authorizing or employing an agent or broker to purchase or sell

---

[11/] For the reasons discussed above, supra Section I, Fukase's reliance on Enea v. Coldwell Banker/Del Monte Realty, 225 B.R. 715 (N.D. Cal. 1998), is misplaced. See Motion at 21-23. Enea does not establish that Shuko Realty's recovery from Fukase is limited to the terms of the Cooperating Agreement. It suggests only that Shuko Realty's recovery from Coldwell Banker is limited thereby. In any event, the Court is not bound by the holding in Enea.

real estate for compensation or commission" to be "in writing, and . . . signed by the party to be charged therewith." Nonetheless, "part performance will take an oral agreement out of the Statute of Frauds 'where there has been substantial reliance by the party seeking to enforce the contract.'" <u>Hawaiian Trust Co. v. Cowan</u>, 4 Haw. App. 166, 171, 663 P.2d 634, 637 (Haw. Ct. App. 1983) (citation omitted).  Thus, when injustice may only be avoided by enforcement of an alleged oral promise – or here, an implied promise – the Statute of Frauds will not serve to bar a party's claims.  <u>See</u> <u>McIntosh v. Murphy</u>, 52 Haw. 29, 34-35, 469 P.2d 177, 180-181 (Haw. 1970).

Relying on this principle, the Hawai'i Supreme Court has found that a claim was not barred by HRS § 656-1(6) where sellers of property "should have reasonably expected that the oral agreement to pay appellee a 3% broker's commission if she produced a ready, willing and able buyer would induce and did induce appellee's actions in bringing the property to the purchasers attention and in steering them to it." <u>Hamilton v. Funk</u>, 66 Haw. 451, 453, 666 P.2d 582, 583 (Haw. 1983).  Here, Shuko Realty has sufficiently alleged that Fukase should have reasonably expected that her implied promise to perform under the Purchase Contract would induce Shuko Realty's actions on her behalf.  <u>See</u> Counterclaim at 7-12; <u>Hamilton</u>, 66 Haw. at 453, 666 P.2d at 583.  Accordingly, HRS § 656-1(6) does not bar Shuko

Realty from recovering from Fukase based on her alleged breach of an implied contract.[12/]

In conclusion, Fukase has not demonstrated that Count II fails as a matter of law. This claim is viable because Shuko Realty "has alleged it performed services for Fukase, who accepted those services, and both parties understood Shuko [Realty] was not intending its services to be gratuitous, but instead, it expected to be compensated." Opp'n at 14; see Kemp, 111 Haw. at 391, 141 P.3d at 1038 (Haw. 2006).

## III.       Count III - Quantum Meruit

Count III of the Counterclaim alleges that from July through September 2008, "at the special instance and request of Fukase, Shuko Realty performed real estate brokerage services for Fukase, including locating and investigating various residential property listings and representing Fukase in researching, negotiating, and preparing the [Purchase Contract], which Fukase agreed to and executed." Counterclaim ¶ 35. Count III further alleges that Shuko Realty "reasonably relied upon Fukase's execution and performance of the terms of the Purchase Contract"; Fukase enjoyed the benefit of Shuko Realty's services; and

---

[12/] The Court notes that California and New Jersey have long had Statute of Frauds provisions similar to HRS § 656-1(6), yet the courts in those states did not find such provisions to bar recovery from a breaching buyer under their implied contract rules. See Cal. Civ. Code § 1624(a)(4); N.J. Stat. Ann. § 25: 1-16 (prior version at 25:1-6 to 25:1-9).

"[p]ursuant to Fukase's executed Purchase Contract, Fukase knew or should have known that Shuko Realty expected to be compensated for the real estate brokerage services rendered to her." Id. ¶¶ 36-38.  The "reasonable value" of the services Shuko Realty provided to Fukase is alleged to be 3% of the $3.6 million sale price, or $108,000.  Id. ¶ 40.

Fukase fails to show that she is entitled to judgment on the pleadings as to Count III.  "The basis of recovery on quantum meruit is that a party has received a benefit from another which it is unjust for him to retain without paying therefor." Maui Aggregates, Inc. v. Reeder, 50 Haw. 608, 610, 446 P.2d 174, 176 (1968).  "'[I]f a party derives any benefit from services rendered by another, the law reasonably implies a promise to pay on the part of the one who has received such benefit, such amount as it is reasonably worth.'"  Id. (citation omitted).  Quantum meruit, also called quasi-contract, is an equitable remedy implied by law to prevent unjust enrichment. See id.; Porter v. Hu, 116 Haw. 42, 54-55, 169 P.3d 994, 1006-07 (Haw. 2007).

For the same reasons that the Court concludes that Shuko Realty has stated a viable claim based on breach of an implied-in-fact contract, the Court concludes that Shuko Realty has stated a viable claim for equitable relief based on quantum meruit.  This conclusion follows Ellsworth Dobbs, Inc. v.

Johnson, 236 A.2d 843 (N.J. 1967), which held that where a buyer is liable to his broker for breach of an implied promise to complete a real estate transaction, and "no amount or percentage had been agreed upon" as to the commission the owner would have paid the broker, "recovery will be based on [q]uantum meruit and measured by the amount accepted as reasonable according to the usual custom in such brokerage business." Id. at 859.[13/] Consequently, assuming Fukase cancelled the Purchase Contract without cause, Fukase may be liable for the reasonable value of those services of Shuko Realty which led to the execution of the Purchase Contract. See Maui Aggregates, 50 Haw. 608 at 610, 446 P.2d at 176.

Fukase unpersuasively argues that Shuko Realty's quantum meruit claim fails as a matter of law. First, relying on Amend v. 485 Props., 627 S.E.2d 565, 568 (Ga. 2006), Fukase contends that a real estate broker may recover in quantum meruit only when "she is the procuring [cause] of the completed transaction." Motion at 23. This argument is foreclosed by the

---

[13/] The Court further notes that although "[q]uantum meruit is not the same as a contract implied in fact," In re De Laurentiis Entm't Group, Inc., 963 F.2d 1269, 1272 (9th Cir. 1992), "the line between an implied-in-fact contract and recovery in quantum meruit . . . is fuzzy indeed," Maglica v. Maglica, 78 Cal. Rptr. 2d 101, 109 n.14 (Cal. Ct. App. 1998). "[Q]uantum meruit is a theory which implies a promise to pay for services as a matter of law for reasons of justice, while implied-in-fact contracts are predicated on actual agreements, albeit not ones expressed in words . . . ." Id. (citations omitted).

implied contract rule outlined above, which allows recovery where a buyer, without cause, fails to consummate a purchase agreement. Amend is inapposite in any event, as it did not consider a broker's right to recover from a buyer whose breach prevented the completion of a real estate transaction.  Rather, it clarified Georgia law by overruling a line of cases stemming from a decision "that a broker was entitled to pursue a quantum meruit claim even though the purchase of the property in question was not due to his efforts."  Amend, 627 S.E.2d at 566-68A.

        Similarly, Fukase claims that Shuko Realty is not entitled to recovery because her purchase of the Home fell through, so there was no benefit to Fukase.  Motion at 26-27; Reply at 10-11.  To the contrary, as a result of Shuko Realty's services, the benefit to Fukase was in place: Fukase had the opportunity to buy the Home through the executed Purchase Contract.  But for Fukase's alleged breach, the transaction would have been consummated and Fukase would have owned the Home.  As Shuko Realty argues, it would be inequitable for Fukase to avoid liability by relying on the sale's nonoccurrence "since Fukase herself is the very reason the sale was not consummated."  Opp'n at 17; cf. Ikeoka v. Kong, 47 Haw. 220, 228, 386 P.2d 855, 860 (Haw. 1963) ("[N]o one can avail himself of the non-performance of a condition precedent, who has himself occasioned its non-performance."); Van Winkle & Liggett v. G.B.R. Fabrics, Inc.,

511 A.2d 124, 131 (N.J. 1986) ("'One who actively prevents the occurrence of a condition cannot rely on the non-occurrence of that condition to avoid liability.'" (citation omitted)).

Second, Fukase argues that Count III fails as a matter of law because the Cooperating Agreement controls the rights of the parties involved with the purchase of the Home.  Motion at 7-8, 24; Reply at 11-12.  Fukase is right that under Hawai'i law, "equitable remedies are not available when an express contract exists between the parties concerning the same subject matter." AAA Hawaii, LLC v. Hawaii Ins. Consultants, Ltd., CV. No. 08-00299 DAE-BMK, 2008 WL 4907976, at * 3 (D. Haw. Nov. 12, 2008) (citing Porter, 116 Haw. at 55, 169 P.3d at 1007).  This principle is inapplicable here, however, because there are no allegations of an express contract between Fukase and Shuko Realty concerning Shuko Realty's right to payment for its services.  Moreover, as Shuko Realty points out, a party may "state claims and seek relief based on alternative, even inconsistent, grounds."  Opp'n at 18 (citing Fed. R. Civ. P. 8(d)(3)).  "As long as [a claimant] seeks only one recovery, it is entitled to pursue both contract claims and quantum meruit claims arising out of the same transaction."  In re De Laurentiis Entm't Group, Inc., 963 F.2d 1269, 1272 n.3 (9th Cir. 1992). Consequently, there is no merit to Fukase's related argument that Shuko Realty cannot recover under quantum meruit because it

failed to exhaust its legal remedies.  Motion at 7-8, 25.

In short, the Court finds that Fukase is not entitled to judgment on the pleadings as to Count III.

**IV.      Count IV - Promissory Estoppel**

Count IV of the Counterclaim alleges that from July through September 2008, Fukase "requested real estate brokerage services from Shuko Realty" and induced Shuko Realty to perform such services.  Counterclaim ¶ 43.  According to Count IV, the "Purchase Contract confirmed a payable commission fee on the sale of the [Home], which represented that Shuko Realty would receive a commission for its real estate brokerage services rendered to Fukase."  Id. ¶ 45.  Further, "Fukase expected, or reasonably should have expected, that Shuko Realty would rely on her representations that Shuko Realty would receive a commission for its real estate brokerage services rendered to her."  Id. ¶ 47.  "By inducing Shuko Realty's reliance on her requests and representations, Fukase is estopped from disclaiming her obligation to pay Shuko Realty its commission of $108,000.  Id. ¶ 48.

Fukase fails to prove she is entitled to judgment on the pleadings as to Count IV.  To establish a claim for promissory estoppel under Hawai'i law: (1) there must be a promise; (2) the promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise;

29

(3) the promisee must in fact rely upon the promisor's promise; and (4) enforcement of the promise must be necessary to avoid injustice.  <u>Gonsalves v. Nissan Motor Corporation in Hawai'i, Ltd.</u>, 100 Haw. 149, 164-65, 58 P.3d 1196, 1211-12 (Haw. 2002). "The 'essence' of promissory estoppel is 'detrimental reliance on a promise.'"  <u>Id.</u> (citation omitted).  For purposes of promissory estoppel, a "promise" is:

> "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made."  More specifically, a "promisor manifests an intention" if he or she "believes or has reason to believe that the promisee will infer that intention from his [or her] words or conduct."

<u>Id.</u> (citations omitted).  A "promise" may be based on express as well as implied representations.  <u>See</u> <u>Suesz v. St. Louis-Chaminade Educ. Ctr.</u>, 1 Haw. App. 415, 418, 619 P.2d 1104, 1106 (Haw. Ct. App. 1980).

Again, for the same reasons that the Court concludes that Shuko Realty has stated a viable claim based on breach of an implied-in-fact contract, the Court concludes that Shuko Realty has stated a viable claim for equitable relief based on promissory estoppel.  Shuko Realty alleges that (1) Fukase impliedly promised to perform under the executed Purchase Contract, so that Shuko Realty could recover a commission for its services, (2) Fukase foresaw or should have foreseen that Shuko Realty would rely on this implied promise,(3) Shuko Realty did

rely on this promise, and (4) enforcement of the promise is necessary to avoid injustice.  See Gonsalves, 100 Haw. at 164, 58 P.3d at 1211; cf. Hamilton v. Funk, 66 Haw. 451, 453, 666 P.2d 582, 583 (Haw. 1983); Chan v. Tsang, 3 Cal. Rptr. 2d 14, 17 (Cal. Ct. App. 1991); Ellsworth Dobbs, Inc. v. Johnson, 236 A.2d 843, 859 (N.J. 1967).

Fukase's arguments why this claim fails as a matter of law are easily disposed of.  First, the implied contract rule outlined above forecloses Fukase's argument that there is no allegation that she promised to pay Shuko Realty's commission. Motion at 28; Reply at 12-13.  It also forecloses Fukase's related contention that Shuko Realty acted upon a promise made by Coldwell Banker, rather than one made by Fukase.  Id.  Second, because HRS § 656-1(6) will not bar a claim "where injustice can be avoided only by enforcement of [an oral or implied] promise," Shuko Realty's claim does not impermissibly evade the Statute of Frauds.  See Hamilton, 66 Haw. at 453, 666 P.2d at 583.  HRS § 656-1(6) also does not bar Count IV because Shuko Realty's performance in securing the Purchase Contract for Fukase removes any promise by Fukase to pay Shuko Realty's commission from the Statute of Frauds's reach.  See McIntosh v. Murphy, 52 Haw. 29, 34-35, 469 P.2d 177, 180-181 (Haw. 1970); Hawaiian Trust Co. v. Cowan, 4 Haw. App. 166, 171, 663 P.2d 634, 637 (Haw. Ct. App. 1983).  Consequently, the Court finds that Fukase is not entitled

to judgment on the pleadings as to Count IV.[14]

**CONCLUSION**

For the foregoing reasons, the Court DENIES Counterclaim Defendant Fukase's Motion for Judgment on the Pleadings.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, November 16, 2010.



_Alan C. Kay_
Alan C. Kay
Sr. United States District Judge

Rogers, et al. v. Fukase, et al., Civ. No. 10-00337 ACK-LEK, Order Denying Counterclaim Defendant Fukase's Motion for Judgment on the Pleadings.

---

[14] As a general matter, the Court notes that if Shuko Realty is entitled to recover on its claims against Fukase, its recovery from Fukase will be limited to whatever amount it is unable to obtain from Coldwell Banker pursuant to the Cooperating Agreement, up to a maximum of 3% of the purchase price of the Home plus any interest, attorneys fees, and/or costs to which Shuko Realty may be entitled.

32